JUDGE BULLITT
delivered the opinion op the court:
Graham brought this action on the 1st of January, 1862, for the purpose of subjecting property formerly belonging to *320 Allen Story to the payment of his debts, according to the provisions of the act of 1856, entitled “an act to prevent fraudulent assignments in trust for creditors and other fraudulent conveyances.” (1 Stan. Rev. Stat., 553.)
It is alleged and proved, that, in July, 1861, Allen Story conveyed 70 acres of land to the appellant, McKee, in payment of $1,000 due to him; and that, in November, 1861, he conveyed the residue of his land to the appellants, Meshac Story and Newman, in consideration of their agreeing to pay debts to the amount of $5,020, for which they were bound as his sureties; and it is alleged that he made these conveyances in contemplation of insolvency, and for the purpose of prefering some of his creditors over others.
It is also alleged that said Allen Story conveyed two slaves to Meshac Story, in consideration of the latter’s agreement to pay $900 upon a debt for which he was bound as surety for the former; but the petition does not allege when this conveyance was made. Meshac Story answers that it was made January 20, 1860, and at the time when he became surety upon said debt; but there is no proof of those facts. In his answer, he refers to the bill of sale of the slaves, and says it is filed as part thereof. We find in the record what purports to be a copy of such a paper; but the record does not show that it was read as evidence in the court below; nor was there any proof of its execution or delivery.
The court below held the lands subject to the provisions of the act of 1856, from which,judgment Meshac Story and others appealed, and dismissed the'petition as to the slaves, to reverse which judgment Graham prosecutes a cross appeal.
It does not appear that, at the time of the conveyance to McKee, Allen Story owned any property, subject to the payment of his debts, except the lands above mentioned. There is no evidence on the subject except the report of the commissioner, who says that “the estate other than land is insignificant, amounting to but a few hundred dollars at most.”
Said lands were worth about $6,000, and, at the time of the conveyance to McKee, Allen Story’s debts amounted to over $12,000. In a case quite similar to this; in which one Apple- *321 gate, owning property worth about $4,000, and being indebted to the amount of about $10,000, executed a power of attorney, by means of which he preferred one of his creditors, this court said: “In view of the limited circle of Ap-plegate’s business, of the excess of his liabilities over his assets and of the suits against him, he must be regarded as having known that he was insolvent, when he executed the power of attorney. The statute would be of little value to creditors, if the courts should require them to produce stronger evidence than the facts above mentioned in order to prove a debtor’s knowledge of his insolvency.” (Applegate and others vs. Murrill and others, June, 1862.)
The mere fact that Allen Story’s debts amounted to twice the value of his property, would perhaps -suffice to prove that he made the deed to McKee, with the intent to prefer him, and in contemplation of insolvency. This conclusion is strengthened by the fact, that, in November following, he conveyed the residue of his property, worth about $5,000 to Newman and Meshac Story, to secure the payment of- debts to that amount, leaving over $6,000 of debts unprovided for, and reserving nothing to pay upon them. If the two conveyances, disposing of the whole property of the debtor, to pay iri full half of his debts, leaving the other half unprovided for, had been made at the same time, there would have been no room for doubt, that each was made in contemplation of insolvency. Though the conveyance to Newman and Meshac Story, having been made in November, does not bear as heavily upon the conveyance to McKee, as if both had been made in July, it seems entitled to. some weight. Debters, wishing to elude the provisions of the act of 1856, will perhaps, often proceed gradually, making several conveyances at different times, to effect their objects. In our opinion, the court below correctly decided, that the conveyance to McKee was made in contemplation of insolvency.
According to the opinion expressed by this' court, in the case-of Wintersmith & Young vs. Poynter & Conway, 2 Met., 447, Graham’s petition concerning the slaves conveyed to Meshac Story, was properly dismissed, because it did not allege that the conveyance was made within six months before the commence- *322 ment of the action. But the facts in that case did not require an expression of opinion upon that point, because the petition not only failed to show that the conveyance was made within six months, but distinctly showed that it was made more than six months, before the commencement of the action, and, consequently, that the plaintiffs had no right to maintain the action. We need not decide, however, whether that dictum ought to be followed, or whether it should be overruled, as being, berhaps, in conflict with the decision in Chiles vs. Drake, (2 Met., 146,) and with the general doctrine, that the plaintiff is not bound to aver that his cause of action accrued within the period of limitation, but that the burthen of showing that it is barred rests on the defendant; because if Graham was not bound to show that the conveyance of the slaves was made within six months before the filing of his petition, he was certainly bound to show that it was made in contemplation of insolvency, and failed to do so. Such a fact might be proved without showing the date of the transaction, as, for instance, by proving declarations of the grantor to the grantee, at the time of the conveyance, that it was made to prefer him, and in contemplation of insolvency. But there is no such evidence in this case. The only evidence that either of the conveyances was made in contemplation of insolvency, is the evidence as to the amount of the grantor’s debts and the value of his property. But that evidence is unsatisfactory as to the conveyance of the slaves, as it does not appear when that conveyance was made nor what was then the grantor’s pecuniary condition. We cannot assume, because he was insolvent in July, 1861, that he was insolvent one or two years before, or at any other indefinite time.
It is not proved, as is suggested by counsel, that Allen Story continued in possession of the slaves. We need not, therefore, express an opinion as to the effect which that fact, if established, would have produced in a proceeding of this kind.
The judgment is affirmed, upon the original and cross appeal.